UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN TRACY FRANK,

           Plaintiff,                   Case No. 2:23-cv-10261

                                         District Judge Brandy R. McMillion

v.                                  Magistrate Judge Anthony P. Patti

MICHELLE FLOYD,

           Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT MDOC DEFENDANT FLOYD'S MOTION FOR SUMMARY JUDGMENT (ECF No. 34)

**I.**    **RECOMMENDATION**:  The Court should **GRANT** MDOC Defendant Floyd's motion for summary judgment (ECF No. 34).

**II.**    **REPORT**

    **A.**    **Background**

Kevin Tracy Frank ("Plaintiff") is currently located at the Michigan Department of Corrections (MDOC) Cooper Street Correctional Facility (JCS). *See* www.michigan.gov/corrections, "Offender Search," (last visited May 12, 2025).  On February 1, 2023, while located at JCS, Plaintiff filed the instant lawsuit *in pro per* against JCS Warden Michelle Floyd.  (ECF No. 1.)  The factual allegations underlying the complaint stem from an August 3, 2022 power outage at

JCS, after which it took 40 days for the ventilation system in Plaintiff's housing unit to be restored. (*Id.*, ¶¶ 6-13.)

Plaintiff's causes of action are based on the Eighth Amendment. (*Id.*, ¶¶ 19-20.) He seeks declaratory relief, an award of nominal, compensatory, and punitive damages, and payment of reasonable attorney fees and costs. (*Id.*, ¶¶ 21.)

## B.    Pending Motion

This case has been referred to me for pretrial matters (ECF Nos. 12, 23), it survived an exhaustion-based motion for summary judgment (ECF Nos. 16, 24, 28), and counsel has since entered an appearance on Plaintiff's behalf (ECF No. 33).

Currently before the Court is Defendant Floyd's November 18, 2024 motion for summary judgment (ECF No. 34) and its related addendum and fact appendix (ECF Nos. 35, 36). Plaintiff has filed a response (ECF No. 37), and Defendant Floyd has filed a reply (ECF No. 38). This motion is ready for decision.

## C.    Fed. R. Civ. P. 56(a)

Defendant Floyd brings her motion for summary judgment pursuant to Fed. R. Civ. P. 56(a). (ECF No. 34, PageID.199.) Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might

affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  To survive summary judgment, one "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586. *See also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there

3

is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Mgmt. Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case . . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

### D.    Discussion

The power outage from which the facts of this complaint stem occurred on August 3, 2022, at approximately 17:56.  (ECF No. 34-2, PageID.244 ¶ 17; ECF No. 34, PageID.214 ¶ 17.)  Therefore, the 40-day period referenced in the pleading would have concluded on September 12, 2022.  (ECF No. 1, ¶¶ 6, 11, 13; *see also* ECF No. 34-4; ECF No. 34-5, PageID.316 ¶ 4.)

4

### 1.   Eighth Amendment deliberate indifference

Plaintiff alleges that Defendant was deliberately indifferent, in violation of the Eighth Amendment, when she "was clearly put on notice by Plaintiff at various times" that "the ventilation system in his housing unit was not working," and she "failed to take any positive action to abate the same," (ECF No. 1, ¶ 19), which "impermissible 'foot-dragging'" deliberately worsened "his COPD [chronic obstructive pulmonary disease] and asthma . . . [,]" (*id.*, ¶ 20).

"The Eighth Amendment's deliberate indifference framework includes both an objective and subjective prong." *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

### 2.   Objective component

Defendant argues that Plaintiff "cannot establish the objective component of his Eighth Amendment claim . . . ." (ECF No. 34, PageID.222.)  "In assessing the objective prong, we ask whether petitioners have provided evidence that they are 'incarcerated under conditions posing a substantial risk of serious harm.'" *Wilson*, 961 F.3d at 840 (quoting *Farmer*, 511 U.S. at 834).

The conditions about which Plaintiff complains may be grouped into two areas:  (a) temperature (*e.g.*, outside heat index, indoor ventilation system [*i.e.*, humidity, condensation, odor]); and, (b) mold (*e.g.*, fungal mycotoxin, mildew). (ECF No. 1, PageID.2-5 ¶¶ 6-13.)

### a.      Mold (*e.g.*, fungal mycotoxin, mildew)

"To prove the objective element for his claim [of exposure to black mold], the prisoner must first show that he has been exposed to unreasonably high levels of black mold." *McIntyre v. Phillips*, No. CIV.A. 1:07-CV-527, 2007 WL 2986470, at *2 (W.D. Mich. Sept. 10, 2007) (footnote omitted) (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  *See also Helling*, 509 U.S. at 35 ("With respect to the objective factor, McKinney must show that he himself is being exposed to unreasonably high levels of ETS.").  "'More than mere scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will be caused by exposure' is necessary to establish the objective component." *McIntyre*, 2007 WL 2986470, at *2 (quoting *Helling*, 509 U.S. at 36).  "Second, 'the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.'" *Id*.  "Courts have looked to several factors to determine if the presence of black mold constitutes a risk of serious harm.  The cases indicate that exposure to black mold might satisfy the objective standard if the prisoner alleges physical injury as a result of the exposure." *Stubbs v. Schroeder*, No. 2:24-CV-22, 2024 WL 747748, at *5 (W.D. Mich. Feb. 23, 2024).  *See also Durden v. Erway*, No. 1:24-CV-1159, 2025 WL 836008, at *5 (W.D. Mich. Mar. 18, 2025) (same); *Thomas v. Michigan Dep't of*

*Corr.*, No. 2:23-CV-191, 2024 WL 1046350, at *15 (W.D. Mich. Mar. 11, 2024) (same).

As to Plaintiff's mold claim, Defendant points to Plaintiff's August 28, 2024 deposition testimony.  (*See* ECF No. 34, PageID.225.)  Plaintiff was asked several questions, including:  (i) "Have you conducted any sort of scientific tests on the alleged mold in the bathroom in the time frame of September or August of 2022?" (ii) "Have you conducted any sort of tests or preserved any of the alleged mold specific to August or September of 2022 in H Unit?" (iii) "Do you have any technical or scientific evidence to confirm you actually inhaled any mold spores?" and (iv) "Do you have any scientific evidence that you have been exposed to my[c]otoxins?"  (*See* ECF No. 34-3, PageID.268 [p. 122]; *id*., PageID.269-270 [pp. 150-151]).  As to each of these questions, Plaintiff answered, "No," or "No, I don't."  (*Id*.)  Defendant additionally points to Plaintiff's allegation that "Black Mold produces a substance called Fungal Mycotoxin that[,] when inhaled[,] has harmful to fatal long term effects on respiratory systems in ways that are not known of until later in life[,]" (ECF No. 1, PageID.4 ¶ 11), accurately describing it as offering "only conclusory reference to potential harm caused by black mold." (ECF No. 34, PageID.225.)  However, this allegation "'relies on a highly attenuated chain of possibilities,' and 'does not satisfy the requirement that threatened injury must be certainly impending.'"  *Bormuth v. Whitmer*, 548 F.

Supp. 3d 640, 652 (E.D. Mich. 2021) (quoting *Clapper v. Amnesty Int'l USA*, 568

U.S. 398, 410 (2013)).  Or, put another way, as the Supreme Court has stated:

"[P]laintiffs must demonstrate, among other things, that they suffered a concrete

harm.  No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S.

413, 417 (2021).  Defendant has shown an absence of evidence that Plaintiff "has

been exposed to unreasonably high levels of black mold." *McIntyre*, 2007 WL

2986470, at *2.

In his response, Plaintiff contends that "black mold was present in the

bathrooms, where Plaintiff was exposed daily . . . [,]" (ECF No. 37, PageID.500 ¶

3), although he testified at his deposition that porters clean the bathrooms "three

times a day . . . [,]" (ECF No. 34-3, PageID.253-254 [pp. 72-73]).  (*See also* ECF

No. 34, PageID.219 ¶ 32; ECF No. 37, PageID.495 ¶ 32.)  Plaintiff also argues that

"[t]he presence of black mold constitutes a substantial risk to Plaintiff's health."

(*Id.*, PageID.502-503.)  This may well be true, but Plaintiff's support for this

argument is unavailing.

For one thing, Plaintiff cites *Helling*, *a case that does not mention mold*, to

illustrate that "courts have held that prolonged exposure to visible black mold can

establish a substantial risk to inmate health without requiring scientific studies."

(ECF No. 37, PageID.503.)  Thus, Plaintiff's authority for this statement is unclear.

Moreover, to the extent Plaintiff contends he "experienced respiratory issues

consistent with exposure to mold, which were exacerbated by the lack of

ventilation[,]" or to the extent Plaintiff contends "Defendant's failure to address

the broken exhaust fan for weeks, despite repeated notifications, left the mold

conditions unremedied[,]" (*see id*., PageID.503), he does not point to evidentiary

support (*e.g*., medical records, maintenance records, etc.)[,]" other than his

complaint (ECF No. 1, PageID.2-3), his August 2022 letters (*id*., PageID.11-12,

14), and materials for grievance JCS-2022-08-0749-28B (*id*., PageID.15-28). (*See*

ECF No. 37, PageID.500 ¶¶ 1, 2; *id*., PageID.503.)[1]

In sum, Plaintiff has not shown that "he has been exposed to unreasonably

high levels of black mold." *McIntyre*, 2007 WL 2986470, at *2.

### b.    Temperature

"Subjecting prisoners to conditions of excessive heat and humidity deprives

them of the 'minimal civilized measure of life's necessities.'" *Wappler v. Huss*,

2009 U.S. Dist. LEXIS 86726, *17 (W.D. Mich. June 30, 2009). As for discerning

---

[1] In her reply, Defendant also contends that "Plaintiff cites no competent evidence he inhaled any sporadic black mold, much less at a constitutionally significant level." (ECF No. 38, PageID.512-513.) *Inter alia*, she correctly notes that Plaintiff's response (ECF No. 37) is "devoid of any sworn evidence." (ECF No. 38, PageID.513.) *See, e.g.*, *Kolesar v. United Agri Prods., Inc.*, 412 F. Supp. 2d 686, 693 (W.D. Mich. 2006), *aff'd*, 246 F. App'x 977 (6th Cir. 2007) (when resolving a Fed. R. Civ. P. 56 motion, the Court should not consider "unsworn or uncertified documents," "unsworn statements," "inadmissible expert testimony," or "hearsay evidence[.]") (citations omitted); *Hart v. Lutz*, 102 F. App'x 10, 13 (6th Cir. 2004) ("Plaintiff's complaint was not verified, and two 'affidavits' submitted by him were not sworn or otherwise subscribed pursuant to 28 U.S.C. § 1746.").

the temperature inside H-Unit over the course of the 40 days, Defendant points to "the temperature outside" and "the ventilation inside."  (ECF No. 34, PageID.227.)

### (i)        Outside (*e.g.*, heat index)

As evidence of the outside temperature, Defendant refers to:  (i) Almanac Weather History for Jackson, MI for the 40-day period from August 4, 2022 to September 12, 2022, including a "Summary of Almanac Temperature Records," purporting that the average low was 57, the average mean was 69.1, and the average high was 82 (*see* ECF No. 34-4); and, (ii) the November 14, 2024 declaration of Michelle Floyd, JCS Warden, who references the Control Center Logbook for its notations of outside temperature at the beginnings of first shift, second shift, and third shift for August and September 2022 (*see* ECF No. 34-5). (ECF No. 34, PageID.227.)  Floyd declares that heat index alerts (issued when the heat index reaches 90 degrees) were issued on three occasions between August 4, 2022 and September 12, 2022, namely August 6, 2022, August 7, 2022, and August 8, 2022.  (ECF No. 34-5, PageID.316 ¶ 4.)  She also declares that, on each day where a heat advisory was issued, "MDOC Staff placed water and/or ice on the yard and monitored the same frequently to ensure inmates had water and/or ice available[,]" and "recreation was . . . canceled to prevent inmates from overheating."  (*Id.*, PageID.317 ¶ 5.)

(ii)    **Inside (*e.g.*, ventilation system [*i.e.*, humidity, condensation, odor])**

As evidence of ventilation in H-Unit, Defendant notes Plaintiff's deposition testimony that, when he was inside Unit H, he "spent most of [his] time in [his] bunk area[,]" (ECF No. 34-3, PageID.255).  (ECF No. 34, PageID.227-228.)  In a declaration, Bradly Handshoe, a maintenance mechanic at JCS, describes each of H-Unit's living quarters as including "a long walkway with open, rectangular cubicles on either side."  (ECF No. 34-2, PageID.239 ¶ 6.)  Handshoe's declaration includes descriptions of windows, air flow, ceiling height, vents and fans.  (ECF No. 34-2, PageID.239-241 ¶¶ 7-12.)  Among other things, Defendant specifically notes Handshoe's declarations that:

- "The rooftop exhaust fan controlling the bathroom exhaust connects to the bathroom vents via duct work.  The attic exhaust fan controlling the living quarters connects to the living quarters vents via duct work.  These ducts do not intermingle.  Meaning, the expulsion of air from the bathroom is governed by the one rooftop exhaust fan, while the expulsion of air from the living quarters is governed by an exhaust fan located in the attic[,]" (*id.*, PageID.243-244 ¶ 16);

- "On August 3, 2022, at approximately 17:56, a power outage occurred that impacted JCS.  The outage caused JCS to operate on generator power until August 4, at approximately 19:22, at which time Consumer Energy restored two of the three phases of JCS power.  The following morning, August 5, at approximately 10:35, Consumer Energy restored the third phase of JCS power.  Once this was done, all regular power at JCS was fully restored[,]" (*id.*, ¶ 17);

11

- "For the timeframe when JCS was operating on only two phases of regular power, the ceiling and industrial fans within H-Unit were operating properly.  However, during this timeframe, inmates could not use their personal fans because the cubicle power outlets (which inmates use to plug in their personal fan) required restoration of the third power phase to function properly[,]" (*id.*, ¶ 18); and,

- "In the timeframe between when the power was fully restored, no later than August 5, 2022, at 10:35 am, through September 13, the attic exhaust governing the H-Unit living quarters functioned properly[,]" (*id.*, PageID.246 ¶ 25).

(ECF No. 34, PageID.228-229.)

### (iii)   Summation

In sum, as detailed above, the Handshoe declaration (ECF No. 34-2), Plaintiff's deposition testimony (ECF No. 34-3), Almanac weather data (ECF No. 34-4), and Defendant's own declaration (ECF No. 34-5) satisfy Defendant's "initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry*, 651 F.3d at 486.

In his response, Plaintiff contends that "the ventilation system in the bathroom was inoperable for weeks due to a broken exhaust fan[,]" and that he endured "a lack of functioning ventilation in the bathroom . . . ."  (ECF No. 37, PageID.500 ¶ 3; *id.*, PageID.503.)  To be sure, Handshoe declares he learned on August 8, 2022 that the exhaust fan was not working, he identified "a malfunctioning motor in the rooftop exhaust fan corresponding to the bathrooms,[,]" he submitted a procurement request the following day, a new motor

12

was ordered, and he performed the repair on September 1, 2022.  (ECF No. 34-2, PageID.245 ¶¶ 20-23.)  And, as noted above, Plaintiff testified at his deposition that, when he was inside Unit H, he "spent most of [his] time in [his] bunk area[,]" (ECF No. 34-3, PageID.255).

Moreover, to the extent Plaintiff contends that "[t]he temperatures in H-Unit were consistently high," (ECF No. 37, PageID.500 ¶ 4), or that he endured "[t]emperatures that regularly reached oppressive levels, as evidenced by heat advisories[,]" (*id*., PageID.503), or that he endured "reliance on inadequate fans in the living quarters[,]" (*id*.), Plaintiff does not point to evidentiary support (*e.g.*, maintenance records, historical weather data, etc.)[,]" other than his complaint (ECF No. 1, PageID.2-3), his August 2022 letters (*id*., PageID.11-12, 14), and materials for grievance JCS-2022-08-0749-28B (*id*., PageID.15-28).  (*See* ECF No. 37, PageID.500 ¶¶ 1, 2; *id*., PageID.503.)

In the end, Plaintiff's argument that "[p]rolonged exposure to excessive heat constitutes a violation of the Eighth Amendment[,]" (ECF No. 37, PageID.503), even if true as a statement, is not properly supported.  While Plaintiff contends that he has endured "prolonged exposure [to excessive heat] that caused discomfort and health effects[,]" he has not "set forth specific facts showing a triable issue.'" *Wrench LLC*, 256 F.3d at 453.  Instead, as Defendant argues, "no reasonable jury

could conclude H-Unit experienced sustained excessive heat requisite to
establishing the objective *Farmer* prong."  (ECF No. 34, PageID.225.)

### 3.   Subjective component

Defendant argues that Plaintiff "lacks evidence Defendant acted with a
sufficiently culpable state of mind."  (ECF No. 34, PageID.229.)  "In prison-
conditions cases that state of mind is one of 'deliberate indifference' to inmate
health or safety[.]"  *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294,
302–303 (1991)).  "Under the subjective prong, an official must 'know[ ] of and
disregard[ ] an excessive risk to inmate health or safety.'"  *Wilson v. Williams*, 961
F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer*, 511 U.S. at 837).

The sworn evidence suggests that Defendant was not aware of Plaintiff's
letters, grievance or allegations until September 16, 2022.  To be sure, the record
contains evidence of Plaintiff's August 8, 2022 and August 17, 2022 letters
addressed to Floyd – the former about the "recent handling of power failure" and
the latter about "the broken ventilation system in H-Unit since power failure of
August 2, 2022."  (ECF No. 1, PageID.11-12, 14.)  The record also contains
evidence of materials related to JCS-2022-08-0749-28B, which was initiated on
August 19, 2022, received at Step I on August 23, 2022 and rejected the same day,
received at Step II on August 30, 2022, responded to on September 16, 2022,
received at Step III on October 4, 2022, and responded to on October 21, 2022.

(*See* ECF No. 1, PageID.15-28; ECF No. 16-3, PageID.102-113; ECF No. 18, PageID.119-135.)

However, in her motion for summary judgment, Defendant refers to evidence tending to establish that she became aware on September 16, 2022, including:

- Plaintiff's testimony that he was located in H Unit from June 29, 2022 to September 13, 2022 (ECF No. 34-3, PageID.251 [p. 53]);

- Plaintiff's concessions at his deposition that he had no evidence Defendant read and/or received Plaintiff's August 2022 letters, seemingly written while in H Unit (*see* ECF No. 1, PageID.11-12, 14), which he left in the kite box (ECF No. 34-3, PageID.261-264 [pp. 105-108]),[2 & 3]

- JCS Maintenance Mechanic Handshoe's declaration that he "installed the motor and repaired the rooftop exhaust fan corresponding to the [H-Unit] bathrooms" on "September 1,

_____

[2] Conversely, when asked about the first letter, Plaintiff also said he "didn't receive any actual evidence that she didn't" read it.  (ECF No. 34-3, PageID.263.)

[3] As one court has noted:  "It cannot be the case that mere attempts to notify prison officials of a serious need through written notes is, by itself, sufficient to satisfy the subjective component of a deliberate indifference claim, particularly where there are no facts from which to infer that a Defendant was aware of those notes." *Whitley v. Michigan Dep't of Corr.*, No. 1:22-CV-448, 2022 WL 16847679, at *2 (W.D. Mich. Nov. 10, 2022).  *See also Cook v. Michigan Dep't of Corr.*, No. 1:21-CV-817, 2024 WL 3535283, at *5 (W.D. Mich. May 31, 2024) ("Cook's allegation that he notified Warden Davids of the situation via a kite on or about August 10, 2021 was not sufficient to establish the subjective element of an Eighth Amendment claim (i.e., '[t]here is nothing in the complaint to indicate whether Defendant Davids received the kite or how he responded to it')."), *report and recommendation adopted*, No. 1:21-CV-817, 2024 WL 3287656 (W.D. Mich. July 3, 2024).  (ECF No. 34, PageID.230-231.)

2022[;]" (ECF No. 34-2, PageID.245-246 ¶ 23; *see also id.*, ¶ 20);

- Handshoe's declaration that and "[b]etween September 1, 2022, and September 13, 2022, there were no more malfunctions to rooftop exhaust fan governing the bathrooms," (*id.*, PageID.246 ¶ 24);

- Plaintiff's admission that, on September 13, 2022, he transferred "out of H Unit to K Unit[,]" (ECF No. 34-3, PageID.251 [p. 53]); and,

- Defendant's September 16, 2022 Step II Grievance Response in JCF-2022-08-0749-28B (ECF No. 1, PageID.22).

(ECF No. 34, PageID.231.)  In fact, Defendant declares that September 16, 2022 was the first time she "reviewed his grievance," "reviewed the letters attached to the grievance," "became aware of his allegations about extreme heat/humidity and mold described therein," and "became aware of Mr. Frank's allegations about the negative impact to his health he claims to have suffered as a result of those alleged conditions."  (ECF No. 34-5, PageID.317 ¶ 7.)

Handshoe and Floyd signed their declarations under penalty of perjury (ECF No. 34-2, PageID.246; ECF No. 34-5, PageID.318), and the Court has every reason to believe that Plaintiff's testimony was given under oath (ECF No. 34-3).  Thus, Defendant has pointed to or supplied evidence that she "became aware of Plaintiff's allegations [on September 16, 2022] *after* Plaintiff's [September 13, 2022] transfer to K-Unit (long-after [the September 1, 2022] repair to the bathroom ventilation)" and has also shown a "lack of evidence that [she] knew of the alleged

16

risk to Plaintiff while it was allegedly occurring . . . ."  (*Id*., PageID.231-232 (emphasis in original).)

In her response, Plaintiff seems to concede there is no evidence Defendant became aware of the alleged conditions in H-Unit before his September 13, 2022 transfer to K-Unit.  (*See* ECF No. 37, PageID.493 ¶ 2; ECF No. 34, PageID.210 ¶ 2; ECF No. 38, PageID.508-509.)  Yet, Plaintiff also contends that, "[d]espite being aware of [certain] conditions, Defendant took no timely or meaningful action, demonstrating deliberate indifference to Plaintiff's health and safety." (ECF No. 37, PageID.500 ¶ 5.)  Whatever discrepancy exists between these positions, Plaintiff's argument that Defendant "acted with deliberate indifference" (*see* ECF No. 37, PageID.503-504) is unavailing.  Plaintiff references his "grievances and . . . kites detailing the dangerous conditions and their effects on his health[,]" as well as "Defendant's inaction, despite knowledge of the conditions," and her "untimely and insufficient" response (as "repairs to the exhaust fan were delayed," and "no interim measures were taken to mitigate the heat or mold exposure.").  (*Id*., PageID.503-504; *see also* ECF No. 37, PageID.500 ¶ 4.)  Not only is Plaintiff's responsive argument unsworn, but also, to the extent his claim against Defendant is based on her denial of Plaintiff's Step II grievance appeal (*see* ECF No. 1, PageID.22) or an alleged failure to act, Plaintiff does not state a 42 U.S.C. § 1983 claim upon which relief may be granted.  *See Shehee v. Luttrell*, 199

F.3d 295, 300 (6th Cir. 1999) (where Defendants' "only roles . . . involve the denial of administrative grievances or the failure to act[,]" they "cannot be liable under § 1983.").

Plaintiff has pleaded his case of deliberate indifference against a particular individual.  Plaintiff has neither shown that the named Defendant was aware of the conditions at issue or the harm posed to Plaintiff during the time period they were alleged to have been suffered, nor that Defendant treated them with indifference once she became aware, nor that any *ex post facto* action by Defendant upon being made aware could have made any difference.  Indeed, although it is unfortunate that there was a loss of some power in some phases of electrical power for a period of time, Plaintiff has not demonstrated deliberate indifference with a "sufficiently culpable state of mind" by anyone.

### 4.    Qualified immunity

Defendant argues she is entitled to qualified immunity (ECF No. 34, PageID.232-233), while Plaintiff argues qualified immunity does not apply (ECF No. 37, PageID.504).  The related two-step analysis requires the Court to consider "whether the facts that a plaintiff has alleged ... or shown ... make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted).  "Qualified immunity is applicable unless the

18

official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232 (citation omitted).

However, if the Court agrees that Defendant is entitled to summary judgment on Plaintiff's Eighth Amendment claims, then the Court need not address whether Defendant is entitled to qualified immunity on such claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

### 5. Burden

In her reply, Defendant contends that Plaintiff "concedes all factual assertions, including those that are outcome-determinative to summary judgment." (ECF No. 38, PageID.509-512.)  Consistent with the April 18, 2024 scheduling order's dispositive motion provisions (*see* ECF No. 26, PageID.174-175), Defendant's motion provides a 41-paragraph "statement of material facts" (*see* ECF No. 34, PageID.210-220 ¶¶ 1-41), in response to which Plaintiff:  (a) admits 14; and, (b) "neither admits nor denies" 27, leaving "Defendant to her proofs." (*See* ECF No. 37, PageID.492-496 ¶¶ 1-41.)

Preliminarily, Defendant aptly notes that Plaintiff "cannot shift to Defendant the burden of proof or rest on his laurels to oppose summary judgment."  (ECF No. 38, PageID.509-511.)  "It is now quite well-established that, in order to withstand a

19

motion for summary judgment, the party opposing the motion must present

'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is

insufficient."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992) (citing

*Anderson,* 477 U.S. at 257; *St. v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th

Cir. 1989)).  *See also Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) ("To

support his or her position, [Plaintiff] must present evidence on which the trier of

fact could find for the plaintiff.").

More to the point, as for the 27 facts that Plaintiff "neither admits nor

denies," Defendant contends they are "de facto" or "tacit" admissions.  (ECF No.

38, PageID.511.)  For example, Defendant states that, "[p]rior to reviewing

Plaintiff's grievance appeal on September 16, 2022," she "was unaware of

allegations of excessive heat, humidity, and/or mold in H-Unit[,]" and "was

likewise unaware of Plaintiff's alleged adverse health effects[,]" (ECF No. 34,

PageID.220 ¶ 40), and Plaintiff "neither admits nor denies" these allegations,

"leav[ing] Defendant to her proofs[,]" (ECF No. 37, PageID.496 ¶ 40).  (ECF No.

38, PageID.511-512.)  (*See also* ECF No. 34-5, PageID.317 ¶ 7.)  However, as the

Court has directed:

> If any of the moving party's proffered facts are contested, the non-
> moving party must explain the basis for the factual disagreement,
> referencing and citing record evidence.  Any proffered fact in the
> movant's Statement of Material Facts that is not specifically contested
> will, for the purpose of the motion, be deemed admitted.  In similar

> form, the counter-statement may also include additional facts,
> disputed or undisputed, that require a denial of the motion.

(ECF No. 26, PageID.174-175 (internal footnote omitted).)  Plaintiff not having

"specifically contested" these 27 factual assertions, they should be deemed

admitted.

### E.    Conclusion

In sum, Defendant Floyd is "entitled to judgment as a matter of law[,]"

because, as discussed in detail above, she has satisfied "the initial burden of

proving that no genuine issue of material fact exists . . . [,]" and Plaintiff has failed

"to respond with a showing sufficient to establish an essential element of [his] case

. . . ." *Stansberry*, 651 F.3d at 486.  Accordingly, the Court should **GRANT**

Defendant Floyd's motion for summary judgment (ECF No. 34).  Since Floyd is

the only defendant, if this recommendation is adopted, the case would be closed.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  May 30, 2025              _____

                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE